**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GREGORY JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-06-2920 |
| | § | |
| HARINDAR SINGH, *et. al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS**

This matter was referred by United States District Judge Lee H. Rosenthal for full pretrial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  (Docket Entry # 10).  Defendants Harindar Singh, Annise D. Parker, Madeleine Appel, Constance Acosta, Judy Gray Johnson, Mary Ann Grant, and the City of Houston (collectively, "Defendants,") have filed a motion to dismiss all claims against them, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Defendants' Motion to Dismiss Under FRCP 12(b)(6) ["Defendants' Motion"], Docket Entry # 20).  Plaintiff Gregory Jackson ("Plaintiff," "Jackson") has responded in opposition to this motion.  (Plaintiff's Response to Defendants' Motion to Dismiss Under FRCP 12(B)(6) ["Plaintiffs' Response"], Docket Entry # 22).  After considering the pleadings and the applicable law, it is RECOMMENDED that the motion to dismiss by Defendants be GRANTED, in part, and DENIED, in part.

**Background**

Gregory Jackson, a former Assistant City Controller for the City of Houston ("the City"), alleges, among other things, that he was terminated from his employment for exercising his First Amendment rights.  Based on that allegation, Jackson filed suit against the City; City Controller Annise D. Parker, and four members of Parker's staff.  Those staff members include the Finance and

Administration Director, Judy Gray Johnson; the Deputy City Controller, Mary Ann Grant; the Deputy Director-Controller, Madeleine Appel, and the Division Manager, Harindar Singh. (Defendants' Motion at ¶ 2). In addition, Jackson has sued Constance Acosta, the Senior Assistant City Attorney-Division Chief.  (Defendants' Motion at ¶ 2).  In his lawsuit, Plaintiff complains of a number of violations of his constitutional and statutory rights. From the record before the court, it appears that Jackson's complaints arise from two different work related events.

The first event occurred in 2004, when Plaintiff requested leave under the Family Medical Leave Act ("FMLA") for injuries he received in a car accident in December 2003. (*Id*. at ¶¶ 46, 71-72). Apparently, the injuries resulted in a work absence, during which Jackson neglected to meet a deadline set by his supervisor, Mary Ann Grant ("Grant"). Plaintiff alleges that, upon his return, on December 30, 2003, the Finance Director, Judy Johnson, demoted him and informed him that Grant was to give him an "unacceptable" performance evaluation. (*Id*. at ¶ 72). That evaluation took place on January 20, 2004, during a meeting with Grant and the Deputy Director-Controller, Madeleine Appel ("Appel"). In fact, Jackson was given an "unacceptable" rating, which carried with it a 90 day period of probation.[1] (*Id*. at ¶ 73). During his evaluation, Plaintiff allegedly told Grant and Appel that he wished to request FMLA leave to excuse his absences that were related to the December car accident. (*Id*. at ¶ 74). According to Plaintiff, Appel approved part of his FMLA request, but "truncat[ed]" the period he requested by two weeks. (*Id*. at ¶¶ 51, 76-77). Appel purportedly told Jackson that she could not grant the entire period requested because "an employee's approved FMLA period starts on the day the employee first seeks treatment for the subject condition." (*Id*. at ¶¶ 52, 78). It appears that Appel's explanation prompted Jackson to "obtain[]

_____

[1] Presumably, Plaintiff was on probation from January 20, 2004, the day of the evaluation, through April 19, 2004, ninety days later.

2

his treating physician's signature on a second certificate," which he then submitted to "cover the remaining days of treatment - days which Jackson was originally denied." (*Id*. at ¶ 53, 79). There is no dispute that Appel approved Jackson's revised request. (*Id*.). Jackson claims here, however, that Appel's actions were designed  "to harass" him for filing FMLA requests while he was on probation. (*Id*. at ¶¶ 54, 80). He also claims that his supervisors wanted "to prevent FMLA from becoming an issue if Defendant Johnson . . . terminated [him] after the mandatory 90 day probationary period." (*Id*. at ¶¶ 54, 80). Based, in part, on these events, Jackson complains that these Defendants violated his rights under the FMLA.

The next series of events about which Jackson complains took place the following year. Jackson alleges that, on June 23, 2005, Defendant Singh reviewed his work performance for the period from July 1, 2004, through June 30, 2005. (Amended Complaint at ¶ 5). Although Singh rated Jackson's performance as "acceptable," he advised Plaintiff that he had the right to respond to the evaluation. (*Id*. at ¶ 5). Jackson took the opportunity to do so, and in his written response, dated July 7, 2005, he made "specific comments about the rating he received from Singh," and he also purportedly stated his "opinion about corrupt practices of City Departments." (*Id*. at ¶ 6). In his Amended Complaint ("Complaint"), Plaintiff claims, as well, that his response expressed views which were adverse to City Controller Parker's on a number of "matters of public interest." (*Id*. at ¶ 8). Jackson alleges, in particular, that he commented on the following public interest issues:

> (1) the nationwide debate on gay and lesbian marriages, (2) his support for the proposed Texas Constitutional Amendment banning recognition of same-sex civil unions slatted for the November 2005 ballot, (3) inadequate, bias, and corrupt investigative techniques of the Houston Police Department which lead to innocent citizens being incarcerated, (4) employment discrimination based on sex in the Office of the City Controller and (5) retaliatory acts of his employer in violation of City policy stemming from his reporting evidence of a hostile work environment to appropriate authorities in accordance with city policy.

(*Id*. at ¶ 8).

3

Jackson alleges that, after receiving his response, Parker convened a meeting of her "executive level staff," including Grant, Appel, and Singh, to consider whether his "lengthy non-job related comments" had violated a City policy.  Plaintiff claims that, at this meeting, the staff also considered whether his "angry and intimidating demeanor" was "possibly associated with alcohol or drug abuse" which required "diagnosis and treatment for anger management exclusively at a drug and alcohol treatment facility."  (*Id*. at ¶ 7).  Jackson alleges that Constance Acosta, the legal division chief, informed Parker that Plaintiff's "speech" could not be used as a justification for treatment.  (*Id*. at ¶ 9).  Despite that warning, however, Jackson claims that Parker "ordered" him to seek treatment for "anger management" from the Houston Council for Drug and Alcohol Abuse as a condition of his continued employment.  (*Id*., at ¶ 8).  Jackson also contends that Parker forced him to attend treatment in the hope that he would refuse to go, which would create "grounds for his termination."  (*Id*. at ¶ 10).

Jackson's counseling sessions began in October 2005, and he claims that, during treatment, he was required to relinquish "individually identifiable health information" about private matters.  (Amended Complaint at ¶¶ 14-15).  Before releasing this information, however, he signed a consent form which assured him that his confidential information was "protected by federal privacy law."  (*Id*. at ¶ 14).  When Jackson finished the program, in December 2005, he received a "certificate of completion."  (*Id*. at ¶ 15).  Plaintiff alleges that, "[f]rom October 2005 through March 2006, none of the Defendants asked [him] about diagnosis and treatment," or sought his "certificate of completion."  (*Id*. at 15).

Sometime in the beginning of 2006, however, Jackson apparently submitted another FMLA request.  Heeding Appel's previous advice, in this request he listed "the treatment period as the date [he] first sought treatment for the illness."  (Amended Complaint at ¶¶ 52, 58, 78).  Jackson does not

name the "illness," which precipitated the request for leave, but states that it "is chronic so no end date was listed."[2]  (*Id*. at 58).  Jackson alleges that Acosta then instructed Appel to "approve [his] FMLA request," but "to change the treatment period's start date to the day of [his] request, [and] not the date [that he] first sought medical treatment."  (*Id*. at ¶ 59).  As a result of these actions, Jackson claims that his requested leave was "truncat[ed] ... by nearly eight full months."  (*Id*. at ¶ 60).

This second FMLA leave request appears to have prompted Jackson to file a complaint with the Department of Labor.  (Amended Complaint at ¶ 16).  He filed that complaint in March 2006, and in it, he recounted the most recent FMLA incident, as well as the one from 2004.  Plaintiff claims that, when Parker learned of the Department of Labor complaint, she directed Singh to verify that Jackson had completed his required drug and alcohol counseling.  (*Id*. at ¶ 18).  Plaintiff claims that Singh then demanded that he submit his certificate of completion, which he refused to do.  Because of his refusal, Defendants allegedly sought the certificate directly from the Houston Council for Drug and Alcohol Abuse and the City of Houston's Employee Assistance Program.  (*Id*. at ¶ 19).  Reportedly, those organizations, citing privacy laws, declined to divulge Plaintiff's confidential medical information.  (*Id*.).  Jackson claims that his supervisors then again requested the certificate from him, this time, threatening "adverse employment action," if he refused to provide it.  (*Id*. at ¶ 20).  Plaintiff again refused, and in June 2006, he was placed on indefinite suspension, with pay.  (*Id*. at ¶ 21, 22).  Jackson alleges that, in response to that suspension, he provided the City with his certificate of completion and "requested permission to return to work."  (*Id*. at ¶ 23).  Four days later, "Parker convened an indefinite suspension hearing," at which Jackson appeared with his attorney.  (*Id*. at 24).  Jackson states that,

---

[2] Jackson states that his illness began in July 2005.  (Amended Complaint at ¶ 58).

> [d]uring the hearing, [he] noted that (1) his performance had been consistently acceptable since the early part of 2004, (2) there was no documented incident of any anger related issues in his file (no informal or formal counseling and no formal discipline of any kind), (3) he reasonably believed that the order was not justified (4) he had a reasonable expectation of privacy in the information **Parker** sought and (5) the **Parker** [sic] and her staff had no cause to insist upon the documents disclosure. [sic].

(*Id*.) (emphasis in original).  Following the hearing, Parker terminated Jackson's employment with the City, effective July 3, 2006.  (*Id*. at ¶ 25).  Jackson insists that he was terminated for a number of unlawful reasons.  Among them are that: (1) he expressed public disagreement with Parker in his response to Singh's evaluation; (2) he refused to surrender his private medical information; (3) he filed a complaint with the Department of Labor about his FMLA violations; and (4) he informed his supervisors that he intended to file a HIPPA claim with the Secretary of Health and Human Services. (*Id*. at ¶ 32).

In his Amended Complaint, Jackson's primary claim is that he is entitled to relief under 42 U.S.C. § 1983 because he was wrongfully terminated from his City employment in violation of his right to free speech under the First Amendment to the United States Constitution and Article 1, § 8 of the Texas Constitution.  (Amended Complaint at ¶¶ 3-10).  He also alleges a second violation of 42 U.S.C. § 1983, based on the complaint that Parker and her staff violated his privacy rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, § 9 of the Texas Constitution by not only requiring him to undergo treatment, but also by forcing him to divulge his medical information.  (Amended Complaint, at ¶¶ 11-25).  And he seeks further relief under § 1983, for a purported violation of his Fourteenth Amendment right to equal protection.  In addition, Jackson claims that he is entitled to relief under the federal conspiracy statute, 42 U.S.C. § 1985(3), because Defendants agreed to violate his rights under § 107(a)(2) of the FMLA.  (*Id*., at

¶¶ 35-55).  Jackson also includes claims for violations of the Family Medical Leave Act of 1993, and the federal Whistleblowers Act, 5 U.S.C. § 2302(b)(8)(A)(i), as well as for common law "negligent supervision."[3]

In his Complaint, Jackson seeks a reinstatement to his former position as an Assistant City Controller, or the equivalent, in addition to lost wages from July 3, 2006, including interest and benefits, as well as punitive damages, "(not less than $250,000)."  (Amended Complaint at ¶ 82).  In total, Jackson is requesting "compensatory and exemplary damages in the amount of $10,422,627.60, reasonable cost[s] and attorney fees."  (*Id*. at ¶ 82).  He also requests that the treatment program  "certificate of completion" be returned to him.  For the reasons set out below, Defendants' motion to dismiss should be GRANTED, in part, and DENIED, in part.

**Standard of Review**

In ruling on a motion to dismiss an action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the allegations as true, view them in a light most favorable to the plaintiff, and draw all inferences in his favor.  *Collins v. Morgan Stanely Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246-47 (5th Cir. 1997).  Federal pleading rules require only "a short and plain statement of the claim" showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a).  As the Supreme Court has emphasized, "heightened fact pleading of specifics" is not required to survive a motion to dismiss under Rule

---

[3] Jackson conceded that, "H.I.P.P.A. does not by its explicit terms authorize a private suit, but instead vests enforcement with the Secretary of Health and Human Services." (Plaintiff's Response to Defendants' Motion for More Definite Statement Under FRCP 12(E) and/or Alternatively Opposed Motion to Dismiss Under FRCP 12(B)(6); Plaintiff's Motion for Leave to Amend Original Complaint FRCP 15(A), Docket Entry # 7).   Plaintiff confirmed this position during a hearing on December 20, 2006.  For that reason, it is undisputed that his Complaint does not allege a HIPPA violation.  (*Id*.).

12(b)(6). *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When ruling on a motion to dismiss under Rule 12(b)(6), a reviewing court must accept as true all of the factual allegations contained in the complaint. *See Twombly*, 127 S. Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). But a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). In addition, pleadings filed by a *pro se* litigant are "'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 127 U.S. 2197 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To withstand a motion to dismiss, however, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 127 S. Ct. at 1965. Finally, a complaint can be dismissed for failure to state a claim only if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974 (abrogating the former Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**Discussion**

Municipal Liability  - Section 1983 Claims Against the City of Houston

Jackson has invoked 42 U.S.C. § 1983 to impose liability on these Defendants for his claims

8

under the First, Fourth, and Fourteenth Amendments.  Section 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Indeed, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights that are conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).  But to establish liability under § 1983, a civil rights plaintiff must make a showing on two elements:  (1) state action; that is, that the complained of conduct was committed under color of state law, and (2) a resulting violation of federal law.   Put simply, the offending conduct must have deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

In his claims under the First, Fourth and Fourteenth Amendments, Jackson has named a number of employees as Defendants, in their official capacities.  It is well settled, however, that a claim against a municipal employee, in his or her official capacity, is the equivalent of a claim made against the municipality, and municipalities are deemed to be "persons" subject to suit under § 1983.  *See Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  Because Plaintiff's allegations point to the City's employees in their official capacities only, they are not individually liable for any of Jackson's claims.  Instead, it is the City that may be held liable if Jackson has stated any valid claims for relief.[4]  But it is well settled that municipal liability cannot

---

[4]  For that reason, the individual City employees should be dismissed, and Defendants' arguments on qualified immunity are not relevant to an analysis of Plaintiff's claims.

be sustained merely under a theory of *respondeat superior* or vicarious liability.  *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur[.]"  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  For that reason, to state a § 1983 claim against a municipality, the plaintiff must allege that the violation of a federally protected right resulted from the execution of a policy or custom adopted by that body's responsible policy makers.  *Monell*, 436 U.S. at 691; *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006).  The essential elements of municipal liability under § 1983 include the following: a policymaker, and an official policy or custom which is the "moving force" behind a violation of constitutional rights.  *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).  For purposes of § 1983, an "official policy" is either,

> a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy.

*Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2005) (quotation and citation omitted). Further, the policymaker "must have actual or constructive knowledge of the alleged policy." *Id.* at 748-49; *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) ("Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983."), *cert. denied*, 540 U.S. 1108 (2004).

In his most recent Complaint, Jackson identifies Parker as the "policymaker," who, "using her separate and distinct policy making authority," in the City Controller's office, terminated his

employment because he "did not immediately comply with [her] newly implemented policy." (Amended Complaint at ¶ 3).  From a liberal construction of the Complaint, it appears that Jackson is complaining of the "policy" which Parker allegedly designed to force employees to undergo treatment for "anger management attributable to drug and alcohol abuse" when the employee expresses views in opposition to those of "Parker and/or her administration," and to punish employees for expressing those views.  (*Id*.).  As a corollary to that "forced" treatment, Jackson also complains about the "policy" requiring him to divulge his treatment records.  (*Id*. at ¶ 12).

As to that policy which Jackson contends violated his rights under the First Amendment to the U.S. Constitution, he alleges that Parker, acting in her official capacity, terminated him in retaliation for expressing his opinion on matters of public concern in his response to the 2005 performance evaluation. (Amended Complaint at 2-5).  To state a valid retaliation claim, which arises from a First Amendment right, a public employee must allege the following elements: (1) that he suffered an adverse employment action; (2) that his speech involved a matter of public concern; (3) that his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and that (4) his speech motivated the employer's adverse action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006) (citing *Johnson v. Louisiana,* 369 F.3d 826, 830 (5th Cir. 2004)); *see also Oscar Renda Contracting, Inc. v. City of Lubbock*, 463 F.3d 378, 382 (5th Cir. 2006). On this claim, Defendants argue merely that, "Jackson's Complaint is defective in that it fails to sufficiently allege facts showing that his speech outweighed the City's interest in promoting efficiency of its operations." (Defendants' Motion, at 4).  From these pleadings, the court assumes that is only disputed element of Jackson's retaliation claim, for purposes of this motion.

In his Complaint, however, Jackson alleges the following:

11

> **Parker**, with the active assistance of **Defendants Appel**, **Singh**, **Grant** and **Acosta**, decided to make an example of **Jackson** by devising a policy with the specific purpose of violating, and reasonably likely to violate, **Jackson's** constitutional and statutory rights as punishment for statements made by **Jackson**.

(Amended Complaint at ¶ 27).   He also claims that "**Parker**'s actions were intended to maliciously injure, embarrass, harass and humilitate **Jackson**."   (*Id.* at ¶ 26).   Accepting Plaintiff's allegations as true, it appears clear that the purported purpose of Parker's policy was not to promote the efficiency of the Controller's Office operations, but to punish Plaintiff for his unpopular opinions. Granting every inference in Plaintiff's favor, the court is persuaded that, for purposes of Rule 12(b)(6), Jackson has stated a claim for a violation of his First Amendment rights.

Jackson further alleges that Parker, Appel and Singh utilized another of Parker's unlawful policies which "required [him] to relinquish by threat/coercion his general right to privacy." (Amended Complaint at ¶ 12).   He claims, in particular, that this policy required him to "relinquish" his "individually identifiable health information obtained and compiled by [the] Houston Council for Drug and Alcohol Abuse."  (Amended Complaint at ¶ 11).   In making that claim, he specifically invokes his Fourth Amendment "right of privacy," but, he alludes to his "general right to privacy," as well.  From the reference to his "general" privacy rights, the court infers from the allegations that Plaintiff is referencing those privacy rights which are encompassed in the Fourteenth Amendment. In their motion to dismiss, Defendants have not briefed the issue in any way, under either the Fourth or the Fourteenth Amendment.  In an abundance of caution, the court will address Plaintiff's claims for violations of his privacy rights under both.

In general, the Fourth Amendment "prohibits *unreasonable* governmental searches and seizures," although "the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental

interests." *Leckelt v. Bd. of Commissioners of Hosp. Dist. No. 1*, 909 F.2d 820, 832 (5th Cir. 1990)

(emphasis in original) (citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989). The

Fifth Circuit has stated that, in making a privacy claim under the Fourth Amendment, a plaintiff,

> must demonstrate both that [he] had an actual expectation of privacy, based on a showing that [he] sought to preserve something as private (which is called a subjective expectation of privacy), and that [his] expectation of privacy is one that society recognizes as reasonable (which we call an objective expectation of privacy).

*Zaffuto v. City of Hammond*, 308 F.3d at 485 (5th Cir. 2002) (citing *Kee v. City of Rowlett*, 247 F.3d

206, 212 (5th Cir. 2001). Here, Jackson has alleged that, before releasing his private medical

information to the treatment center, he "signed a form that denied disclosure of any patient

information without his written consent. The consent form [also] . . . made special note of the fact

that the records of the Houston Council for Drug and Alcohol Abuse are protected by federal privacy

law." (*Id.* at ¶ 14). From this allegation, the court is satisfied that Plaintiff has articulated a

reasonable expectation of privacy in the confidential medical information he gave to the treatment

center. His allegations also detail his unsuccessful attempts to withhold this information from his

supervisors. Based on those allegations, it is equally clear that he sought to "preserve" this

information as private. Consequently, it is arguable that Jackson has stated a claim for relief under

the Fourth Amendment. Typically, however, Fourth Amendment claims involve an unreasonable

search or seizure of a "constitutionally protected area," such as a person's home. *Silverman v. U.S.,*

365 U.S. 505, 511 (1961) ("The Fourth Amendment, and the personal rights which it secures, have

a long history. At the very core stands the right of a man to retreat into his own home and there be

free from unreasonable governmental intrusion."); *see also Martin v. Tex. Dep't of Protective and

Regulatory Servs.*, 405 F.Supp.2d 775, 795 (S.D.Tex. 2005). Despite that general application,

however, the Supreme Court found, in *Skinner v. Railway Labor Executives' Association*, that a

13

federal regulation which required employees to produce urine samples for chemical testing constituted a Fourth Amendment "search," because "those tests invade reasonable expectations of privacy." *Skinner*, 489 U.S. 602, 616-618 (1989).  In addition, although the Supreme Court has previously held that "a search must be supported, as a general matter, by a warrant issued upon probable cause," it has also noted that a warrant is not "an indispensable component of reasonableness in every circumstance."  *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 664 (1989).   On that premise, the Court found that when "a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests."  *Id*. at 665; *see also O'Connor v. Ortega*, 480 U.S. 709 (1987) (holding that "[s]earches and seizures by government employers or supervisors of the private property of their employees are subject to Fourth Amendment restraints.").  The Fifth Circuit embraced this principle in its opinion in *Leckelt v. Bd. of Commissioners of Hosp. Dist. No. 1*.   In that case, the court analyzed, under the Fourth Amendment, the question of whether a nurse was entitled to withhold from his employer the results of a voluntary HIV test.  *Leckelt*, 909 F.2d 820, 832-33 (5th Cir. 1990).  The court balanced the employee's expectation of privacy in his test results with the hospital's interest "in a safe, efficient workplace."  *Id*.  Although the court ultimately ruled that the employee's expectation of privacy was not reasonable in light of the employer's proven "strong interest in maintaining a safe workplace," it is apparent that the contours of the Fourth Amendment's protection is not limited to a strict law enforcement search or seizure scenario.  *Leckelt*, 909 F.2d at 833.

In light of that precedent, and accepting the allegations as true, it appears that Jackson may have an expectation of privacy in the "completion certificate" that the City allegedly demanded from

him.  Whether that expectation is a reasonable one, however, is not an appropriate inquiry at this stage of the proceedings.  On the allegations in the Complaint, the court is persuaded that Jackson has stated a claim for a violation of his Fourth Amendment right to privacy.  Whether his allegations are sufficient to state a claim under the Fourteenth Amendment invites a wholly different inquiry.

The Fourteenth Amendment's Due Process Clause contains a "substantive component" which "protects individual liberty against 'certain government actions regardless of the fairness of procedures used to implement them.'" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)).  This "substantive due process" right has been held to protect two different privacy interests.  *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996).  The first, the "autonomy branch," protects a person's interest in making independent decisions on important matters, "such as those relating to marriage, procreation, and education." *Zaffuto*, 308 F.3d 485.  The other "branch" protects an individual's "interest in avoiding disclosure of personal matters," and is commonly viewed as the "confidentiality branch."  *Zaffuto*, 308 F.3d at 490 (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977).  In fact, the Fourteenth Amendment has been deemed to afford protection to the disclosure of confidential information.  *Zaffuto*, 308 F.3d at 489 (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *see also Martin v. Tex . Dept. of Protective and Regulatory Servs.*, 405 F.Supp.2d 775 (S.D. Tex. 2005).  However, "[t]here is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch."  Indeed, it is undeniable that "the contours of the confidentiality branch are murky." *Zaffuto*, 308 F.3d at 490 (citing *The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991).  The Fifth Circuit has recognized, however, that, "[t]he constitutional right to privacy is generally limited to only the most intimate aspects of human affairs."  *Id*. (citing *Wade v. Goodwin*, 843 F.2d

15

1150, 1153 (8th Cir. 1988).   And although this circuit has never explicitly stated that medical information is entitled to constitutional protection, other circuits have done so.   In fact, in *A.L.A. v. West Valley*, the Tenth Circuit recognized that, "confidential medical information is entitled to constitutional privacy protection." *A.L.A. v. West Valley City*, 26 F.3d 989 (10th Cir. 1994); *see also Aid for Women v. Foulston*, 441 F.3d 1101, 1124 (10th Cir. 2006); *Hahnemann Univ. Hosp.* v. *Edgar*, 74 F.3d 456 (3d Cir. 1996); *Life Partners, Inc. v. Morrision*, 484 F.3d 284, 295 (4th Cir. 2007).

The focus of the Fourteenth Amendment's privacy protection, however, is on the *disclosure* of confidential information.   For example, in *Fadjo v. Coon*, the plaintiff complained that state employees violated his privacy rights when they revealed to an insurance company employee "the most private details of his life."   *Fadjo*, 633 F.2d 1172, 1174 (5th Cir. 1981).   Significantly, the *Fadjo* court was careful to distinguish this alleged privacy violation from a claim that private "information was [not] properly obtained."   *Id*.   By contrast, in *Zaffuto v. City of Hammond*, the Fifth Circuit held that the disclosure of a policeman's conversation "about a controversial restructuring in the police department," was not "'personal' enough to create a constitutional cause of action."   *Zaffuto*, 308 F.3d at 490.   Here, Jackson complains that he was forced to divulge his personal medical information to his supervisors, but he does not allege that they revealed that information to any other entities.   In that way, he has not invoked the Fourteenth Amendment's protection of the disclosure of such confidential information.   Further, it is clear that when "the Fourth Amendment fully protects" a plaintiff's privacy claim, "courts should not consider the vaguer protections established by substantive due process." *Roe v. Tex. Dep't of Protective and Regulatory Servs.*, 299 F.3d 395; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).   Here, Jackson's Fourth

Amendment claim fully protects his complaint that the City required him "to relinquish" his medical information and the certificate of completion. Moreover, he does not allege that the City disclosed that information to any third parties. For that reason, the court is persuaded that he has failed to state a claim for a violation of his privacy interest under the Fourteenth Amendment.

Finally, Plaintiff also appears to allege that Defendants violated his right to equal protection under the Fourteenth Amendment. (*Id*. at 8-11). On that claim, he appears to cite another "policy" that Parker enacted, alleging that,

> **Parker**, exercising her independent policy maker authority, systematically singled out **Jackson**, a black male, and required forced diagnosis and treatment as a condition of continued employment . . . **Parker** did not require any other employee, whether similarly classified to Jackson, to attend the diagnosis and treatment program.

(Amended Complaint at ¶ 26). As the Fifth Circuit has observed, "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5 th Cir. 1988) (citing *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege that "the government treats [him] differently than others similarly situated." *Brennan*, 834 F.2d at 1257; *see also Lira v. Birdwell*, 234 F.3d 706 (5th Cir. 2000). To state a claim of racial discrimination under the Equal Protection Clause, a plaintiff "must demonstrate that the government official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Further, because racial classifications "carry a danger of stigmatic harm," the Fifth Circuit has recognized that, "all race-conscious measures receive strict scrutiny review under the Equal Protection Clause." *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006).

17

Here, although Jackson identifies himself as a "black male," he does not explicitly state that any of Parker's actions were taken because of his race.   His actual claim is that Parker "systematically singled [him] out, and required forced diagnosis and treatment [for him]. . . despite [her] awareness of other employees' specific acts of inappropriate verbal and physical behavior demonstrating other employees' uncontrollable anger."   (*Id.*).   From the allegations that Parker "singled out" Jackson, among other employees who had also expressed "inappropriate verbal and physical behavior," it is reasonable to infer an allegation that he received this treatment because he is a "black male."   (*Id*. at ¶ 26).   Construing the factual allegations "in the light most favorable" to Plaintiff, they suffice to state a claim for a violation of his Fourteenth Amendment right to equal protection.

Accordingly, it is RECOMMENDED that Defendants' motion to dismiss Plaintiff's § 1983 claims against the City for violations of his right to equal protection under the Fourteenth Amendment, his right to privacy under the Fourth Amendment, and his claim for retaliation under the First Amendment, be DENIED.

Civil Rights Conspiracy

Jackson's Complaint alleges that the City, his supervisors, and the City's legal representatives conspired against him in violation of 42 U.S.C. § 1985(3).  (Amended Complaint at ¶12).  That statute prohibits any agreement to deprive an individual of his civil rights. (Amended Complaint, at ¶¶ 35-43, 44-55).   Jackson complains that, because of "agreement(s) between Defendants Parker, Appel, Singh and Acosta," he was "(1) denied his requested FMLA treatment period (2) deprived of eligibility for an award of personal days (benefit) on March 3, 2006 and (3) indefinitely suspended/terminated on July 3, 2006."  (*Id*. at ¶ 43).

18

But to state a conspiracy claim, under 42 U.S.C. § 1985(3), a plaintiff must allege the following: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). Because a unit of government and its employees are deemed to constitute a single legal entity, governmental entities and their employees cannot conspire among themselves for purposes of § 1985(3). *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). For this reason alone, Jackson's § 1985 allegations fail to state a claim. However, Jackson's federal conspiracy claim fails for an additional reason, as well. The Fifth Circuit has held that any valid claim under § 1985(3) must allege that the conspiracy was motivated by race or class-based animus. *See Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *Newberry v. East Texas State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1988); *Hilliard*, 30 F.3d at 652-53. Jackson's Complaint is silent on any allegations of that nature. If anything, the Complaint relies solely on the allegations that Jackson was terminated because of his publicly expressed views. The current allegations are not sufficient to state a claim for conspiracy under 42 U.S.C. § 1985(3), and for that reason, it is RECOMMENDED that Defendants' motion to dismiss those claims be GRANTED.

Whistleblower Protection Act

Jackson appears to allege, in three places, that his suspension or termination violates 5 U.S.C. § 2302(b)(8), the federal Whistleblower Protection Act. (Amended Complaint, at ¶¶ 2, 6). The first mention is his reference to "the Whistle Blowers Act," in the paragraph asserting federal

jurisdiction.  (*Id*. at ¶ 2).  The other two references point to Jackson's "prerogative as a citizen to expose government corruption."  (*Id*. at ¶¶ 4, 6).  However, the federal Whistleblower Act prohibits adverse employment actions against a federal employee who "discloses information that [he] reasonably believes evidences a violation of any law or actions that pose a substantial and specific danger to public health or safety."  *See Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997); 5 U.S.C. § 2302(b)(8).  Because Jackson is not a federal employee, he cannot state a valid claim under that Act.  For this reason, it is RECOMMENDED that that claim be DISMISSED.

Claims Under the Texas Constitution

Jackson makes fleeting reference to alleged violations of Article 1, §§ 8 and 9, of the Texas Constitution.  (Amended Complaint at 2, 5, 6).  Those provisions are analogous to the First and Fourth Amendments of the U.S. Constitution.  However, any claim by Jackson under the state constitution fails as a matter of law because "tort damages are not recoverable for violations of the Texas Constitution."  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001), *cert. denied*, 534 U.S. 951(2001); *see also Gillum v. City of Kerrville*, 3 F.3d 117, 122 (5th Cir. 1993) ("Texas courts have not recognized a violation of Article I, Section 8, as an actionable constitutional tort."), *cert. denied*, 510 U.S. 1072 (1994); *Favero v. Huntsville Indep. Sch. Dist.*, 939 F. Supp. 1281, 1296 (S.D. Tex. 1996), *aff'd*, 110 F.3d 793 (5th Cir. 1997) (rejecting claim for damages under Tex. Const. art. I, § 6); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995) ("We hold there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution.").  Because these allegations fail to articulate a valid cause of action, Jackson's claims under the Texas Constitution fail as a matter of law.  For that reason, it is RECOMMENDED that those claims be DISMISSED.

Family Medical Leave Act (FMLA)

Jackson's FMLA claims arise from the facts surrounding his 2004 and 2006 requests for leave.  As noted previously, in 2004, Appel initially denied two weeks of leave that Jackson had requested.  In making that decision, she allegedly cited a City rule that, "an employee's approved FMLA period starts on the day the employee first seeks treatment for the subject condition."  (*Id*. at ¶¶ 52, 78).  Apparently, Plaintiff listed an improper date, which triggered the denial.  After learning of the FMLA leave policy, however, Plaintiff submitted a revised request, and Appel then approved the two weeks "originally denied."  (*Id*.).  In his Complaint, Jackson claims that Appel's actions were meant "to harass" him for filing FMLA requests while he was on probation, and "to prevent FMLA from becoming an issue if Defendant Johnson . . . terminated [him] after the mandatory 90 day probationary period."  (*Id*. at ¶¶ 54, 80).

In making his claim based on the 2006 FMLA leave request, Plaintiff contends that he relied on the City's "FMLA policy" to his detriment.   Specifically, he claims that, because of Appel's advice, he listed the start date for his 2006 request "as the date [he] first sought treatment for the illness."  (Amended Complaint at ¶¶ 52, 58, 78).  Jackson alleges that Acosta then instructed Appel to "approve [his] FMLA request," but "to change the treatment period's start date to the day of [his] request, [and] not the date [that he] first sought medical treatment."  (*Id*. at ¶ 59).  As a result of these actions, Jackson claims that his requested leave was "truncat[ed] ... by nearly eight full months."  (*Id*. at ¶ 60).[5]

In general, the FMLA contains a provision which details particular employee rights or

---

[5] Regardless of this claim, however, under the statute an employee is only entitled to, at most, "12 workweeks of leave" in any given year.  29 U.S.C.A. § 2612

"entitlements," as well as a provision which protects employees from retaliation for exercising their rights under the statute.   Under the FMLA, "an eligible employee," is entitled to "a total of 12 workweeks of leave during any 12-month period" if such leave is necessary to his own recuperation, or to care for any statutorily designated family members.   29 U.S.C.A. § 2612, Family and Medical Leave Act of 1993 (2007); *see also Mauder v. Metropolitan Transit Auth. of Harris County*, 446 F.3d 574, 579 (5th Cir. 2006).   It is undisputed that an employee is entitled to FMLA leave, "[b]ecause of a serious health condition that makes [him] unable to perform the functions of [his] position." 29 U.S.C.A. § 2612 (1)(D).  A "serious health condition" is further defined as "an illness, injury, impairment or physical condition that involves 1) inpatient care or 2) continuing treatment by a health care provider."   *Mauder*, 446 F.3d at 579 (5th Cir. 2006) (citing 29 C.F.R. § 825.114(a)(2)(iii).  And, the law protects those employees who take necessary leave by explicitly providing that they are entitled "to return to the same position after a qualified absence."   *Id*.

By contrast, the proscriptive provision of the FMLA does not grant any rights, but instead, aims to "protect[] employees from retaliation or discrimination for exercising their rights under the FMLA."  *Mauder*, 446 F.3d at 580.   To state a retaliation claim under the FMLA, a plaintiff must allege that, "1) he is protected under the FMLA; 2) he sought to return to work before the FMLA leave expired; and 3) the employer failed to reinstate him to [his] position, or an equivalent position."  *Mauder*, 446 F.3d at 580 (5th Cir. 2006).   In addition, the statute provides for a three-year limitations period for willful violations, and a two-year limitations period otherwise.  29 U.S.C. § 2617 (c)(1) and (2).   While the FMLA does not provide a definition for a "willful" violation, the Fifth Circuit has held that, "[t]o establish a willful violation of the FMLA, a plaintiff must show that his employer "either knew or showed reckless disregard for the matter of whether its conduct was

22

prohibited by statute." *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387, 393 (5th Cir. 2005) (citing *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Here, Jackson appears to complain that Defendants Appel, Acosta and Johnson, "denied his requested FMLA treatment period." (Amended Complaint at ¶ 55). In granting every inference in Jackson's favor, the court assumes that this allegation is a claim that Defendants violated his right to a requested FMLA leave. On the other hand, Jackson also complains that those three "intentionally interfered with, restrained and denied [his] exercise of rights under [the] F.M.L.A.," which appears to point to a retaliation claim under the FMLA. Although Jackson complains that, in 2004, his FMLA rights were violated, he clearly states that he was granted the leave "originally denied." As to that 2004 incident then, Jackson fails to state a claim for a violation of his substantive rights under the FMLA.

Plaintiff also complains, however, that Defendants "harassed" him, and "interfered with" his requested leave in 2004. To state a retaliation claim under the FMLA, Jackson ultimately must allege that "he sought to return to work before the FMLA leave expired; and [that] the employer failed to reinstate him." *Mauder*, 446 F.3d at 580 (5th Cir. 2006). From the Complaint, it appears that Jackson did not seek FMLA leave until after he returned to work. His car accident occurred on December 26, 2003, and he returned to work on December 30, 2003. (Amended Complaint at ¶¶ 71-72). At that time, he was demoted for having missed a work deadline while he was absent. It was not until January 20, 2004, however, during his performance evaluation that Jackson requested FMLA leave to cover his previous absence. (Amended Complaint at ¶ 74). From these factual allegations, Jackson cannot claim that "he sought to return to work before his leave expired," or that

his "employer failed to reinstate him," after the requested leave.  For that reason, Jackson cannot complain that Defendants' "harassment" was in retaliation for the exercise of his FMLA rights, in 2004, and his claims should be dismissed.[6]

However, Jackson makes a second complaint under the FMLA, one based on events in 2006, which is clearly within the two year statute of limitations.  He alleges, specifically, that, on February 28, 2006, "Defendant Parker directed Defendant Appel to interfere with or deny the treatment period requested by Jackson in violation" of the statute.  (Amended Complaint at  ¶ 58).  Again, such "harassing" behavior would appear to point to a retaliation claim under the FMLA.  But, once again, Jackson does not allege that he "sought to return to work before his leave expired" or that his "employers failed to reinstate him."  Such allegations are critical to a FMLA retaliation claim, and Plaintiff's failure to include them are fatal to his Complaint.  Indeed, if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," he fails to state a claim upon which relief can be granted, under Rule 12(b)(6).  *Twombly*, 127 S. Ct. at 1974.  For that reason, it is RECOMMENDED that Defendants' motion to dismiss Plaintiff's FMLA claims be GRANTED.

Negligence Claims

Finally, Jackson alleges that Defendants Parker, Grant and Johnson are liable under the Texas common law for "negligent supervision" because they breached a "duty of care" "to ensure [their] staff's compliance with provisions of state and federal laws."[7]  (Amended Complaint at ¶ 57).

---

[6]  With that finding, it is not necessary to address Defendants' argument that Jackson's 2004 FMLA claim is barred by the two-year statute of limitations.  (Defendants' Motion, at 3).

[7]  Although Jackson styles his claims as ones for "negligent supervision," Texas courts have not recognized a cause of action for "negligent supervision," but have weighed such claims under a general negligence analysis.  *Castillo v. Gared*, 1 S.W.3d 781, 785 (Tex. App.-Houston

In particular, Plaintiff alleges that Defendant Parker is liable for "negligent supervision" because she was (1) "aware of her responsibility," and "(2) breached her duty of care by failing to implement policies and procedures as an elected official and head of the City of Houston's Office of the City Controller." (Amended Complaint at ¶ 56). He also claims that she "failed to implement policies and procedures to ensure her staffs' compliance with provisions of state and federal laws." (*Id*. at ¶ 57). Jackson makes almost identical allegations against the other City employees. He alleges that Mary Ann Grant, was (1) "aware of her responsibility, [and] (2) breached her duty of care by failing to implement policies and procedures as a division head for the City of Houston's Office of the City Controller." (*Id*. at ¶ 65). He alleges that Johnson was "(1) aware of her responsibility, [and] (2) breached her duty of care by failing to implement policies and procedures as elected official and head of the City of Houston's Office of the City Controller."[8] (*Id*. at ¶ 69). From these allegations, it is clear that the alleged liability of these parties stems solely from their positions with the municipality. On that point, again, a "suit against a governmental employee in his official capacity is essentially a suit against the governmental agency the person works for, rather than a suit against the individual." *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex.App.-Austin May 18, 2007, no pet. h.); *Gomez v. Housing Auth. of the City of El Paso*, 148 S.W.3d 471 (Tex. App. El Paso 2004).

Under Texas law, a governmental unit "is immune from tort liability unless the legislature

---

[1st Dist.] 1999), pet. denied); *see also Harrison v. Broadband Servs., Inc.*, 2006 WL 1493647, *2 n.2 ((Tex. App.-Houston [1st Dist.]). For that reason, Jackson's claims for "negligent supervision," against the employees in their official capacities are essentially claims against the City of Houston for negligence.

[8] In the next paragraph of Jackson's Complaint, he states that Johnson "held either the (a) elected office of City Controller or (b) Deputy City Controller in the City of Houston's Office of the City Controller." (Amended Complaint at ¶ 70).

25

has somehow waived immunity." *Forgan v. Howard County, Tex.*, — F.3d —, 2007 WL 2135501

(5th Cir. 2007).   In enacting § 101.021 of the Texas Civil Practice and Remedies Code, the

legislature decided to waive governmental immunity for certain injuries only.  The statute is explicit

that "a governmental unit in the state is liable for" the following:

> (1) property damage, personal injury, and death proximately caused by the wrongful
> act or omission or the negligence of an employee acting within his scope of
> employment if:
>> (A) the property damage, personal injury, or death arises from the operation
>> or use of a motor-driven vehicle or motor-driven equipment; and
>> (B) the employee would be personally liable to the claimant according to
>> Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or
> real property if the governmental unit would, were it a private person, be liable to the
> claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.  It follows that, under this Act, a "governmental unit in the

state" is liable only for those torts which result from "the operation or use of a motor-driven vehicle

or motor-driven equipment," or the "use of tangible personal or real property."  Tex. Civ. Prac. &

Rem. Code § 101.021.  Here, Plaintiff does not allege that the use of any property resulted in his

injury.  Rather, his claims stem from two sources.  The first is the events surrounding his FMLA

requests, which he claims reduced his available sick and personal leave days.  The second is the

alleged attempt to seek his "individually identifiable health information," which he claims interfered

with his right to privacy.  (Amended Complaint ¶¶ 56-64).  From these allegations, it is clear that

Plaintiff has not stated a valid claim against the City for negligence and it is RECOMMENDED that

Defendants' motion to dismiss these claims be GRANTED.

**Conclusion**

Accordingly, it is RECOMMENDED that the motion to dismiss by Defendants be GRANTED, in part, and DENIED, in part.  In particular, it is RECOMMENDED that all individual Defendants be dismissed and that Defendants' motion to dismiss Plaintiff's § 1983 claims based on First Amendment retaliation, Fourth Amendment privacy and Fourteenth Amendment equal protection allegations be DENIED.  However, it is RECOMMENDED that Defendants' motion to dismiss all of Plaintiff's other claims against the City be GRANTED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten (10) days from the receipt of it to file written objections thereto, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas.  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, **and** to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 5th day of September, 2007.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**